Good morning. May it please the court. My name is Carl Collins, and I represent Michael D. McGranahan, the appellant and Chapter 7 trustee in the underlying bankruptcy case involving Dolores Garcia. Fundamentally, what is at the heart of this entire dispute in the trustees' eyes is one of unjust enrichment. The resulting trust that has been created by both the Bankruptcy Court and the Bankruptcy Appellate Panel, if allowed to stand, we believe will result as a direct windfall to the appellee, Ms. Rosa, to the direct detriment to her life. My client, the trustee, in essence, represents creditors in the bankruptcy estate. The fundamental policy and the statutory intent of the bankruptcy code is to provide a rateable distribution to creditors. Creditors within a given class are paid in an equal rate of basis. There's no discrimination between one creditor or other. So in the end, the result-oriented view of this case is, should this Court envelop and hold an equitable remedy that is going to allow Rosa to boost her standing in priority above the pool of general unsecured creditors in the case. Sotomayor, I realize that you're on the side of the question I'm going to ask, but I'm trying to simplify it so I can understand it.  Does this whole thing really turn, in the first instance at least, on whether there was a transfer of property at the beginning of the second period such that a resulting trust can be imposed? Or am I oversimplifying? No, I think that is one of the, in our opinion, the concept of resulting trust is hinged upon and depends upon some sort of transfer. And without that transfer occurring or being able to be identified, it creates a whole host of ambiguities as to when does the resulting trust occur and how does that timing affect the trustee's subsequent powers as the ability to undo fraudulent conveyances. Because if the resulting trust occurs in 96 during the second time period, it's outside the 4-year statute of a fraudulent command statute. If the resulting trust has occurred at the time that Ms. Rosa believes she was entitled to a deed, which was at the end of the payment of the Duarte note 4 years later in 2000, a mere 6 months approximately before the bankruptcy case, it would fall within the trustee's other powers of avoiding. So why in, again, in very simple terms so I get it, why is it that in your view there was no transfer at the second period? Because there was really no incidence of anything really being conveyed or transferred. There was an intention of the parties. And in fact, I think a reasonable argument can be made that the second time period was really no more than an extension of the underlying debtor credit agreement in the first time period. If you'll look at the bankruptcy court had the opportunity to hear the live testimony of both Garcia and Rosa and review both of their depositions and found that the original agreement was a loan. Rosa loaned Garcia $15,000 so she could make the down payment on the purchase of the property. It was understanding that Rosa would be repaid either from the sale of the real property in which she would get a cash or credit. And she also had a first right of refusal to purchase the property in the event that Garcia attempted to sell it. That's in the court's findings. What happened was that approximately a year into the case or into the transaction, Garcia for whatever reason, for lack of a better word, just walked away or abandoned. I don't have any other explanation and there really wasn't given any by the parties. Garcia then stepped in by her own admission to make sure that her sister did not lose the property. We believe that part of her motivation was to regain the $15,000 down payment and protect the underlying agreement which was she had the right to purchase the property in the end. She was effecting that original agreement by entering into agreement with her sister that she'll continue making the payments and at the end of the Duarte note, title or something would then transfer at that time. So it's our agreement that it really is a debtor-creditor relationship. And the type of the – everyone's looking for an equitable remedy. These are two very unsophisticated parties. There was some sort of agreement related to how this property is going to be transposed. But the equitable remedy that is fashioned by this Court is going to have a direct bearing. On the other party to this is my client who represents the creditors of the bankruptcy state who have an equal share in the rateable distribution of the debts of the debtor. If your position prevails, what happens to Garcia? Garcia is the debtor, so she's going to get her discharge. Ms. Rosa, excuse me. Ms. Rosa has the largest claim in the case. There are approximately $60,000 of other unsecured creditors in the case. Her claim, as contemplated under the Bankruptcy Code, her $85,000 claim will be lumped in with the other group of unsecured creditors and she'll receive the pro-rated distribution equal to all the other creditors in the case. And fundamentally, that's what I – what Trustee is arguing is why should Ms. Rosa be accorded that status higher than unsecured creditors? We have a transaction between relatives. There's some evidence that Ms. Rosa, for whatever reason, has reluctant to place real property in her name. She did it in this instance. She's done it in the property. She claims a similar interest in a property of her father. She holds real property but doesn't want any recorded interest. And the whole purpose of the recording statutes and the race notice priority of liens given under California law is to prevent and avoid exactly these types of ambiguities. And having created these ambiguities by failing and avoiding to put title in her name at repeated requests by Ms. Garcia, she's created this claim of resulting trust where she's now asking the court to give her something. As the bankruptcy court found, she wouldn't have been entitled to under the civil code if an actual unrecorded deed had been transferred. So why should she have greater rights now when she hasn't, you know, satisfied the basic premises of trying to hold and transfer real property under California law? Okay. Maybe we can hear from Mr. Davis and then get back to you. Thank you. Good morning, Your Honor. Brian Davis for Hortensia Rosa. Was there a transfer? There was a transfer of money. And that's what the distinction is. As counsel indicated, there were basically two agreements. But I have cited on page three of my brief actually the proof at the trial level of the new agreement in February of 1996. This is when the agreement was that the underlying debtor could no longer pay the obligation. She said, Sister, if you pay, I will grant you title, but you have to make the payments. So Hortensia at that point in February of 1996, Hortensia Rosa started making all the payments. She made all the mortgage payments. She made all the insurance payments. She paid everything of ownership. By California law, there is no imposition of a trust at a later date. It's something that is imposed upon the acts of the parties. In this case, when Hortensia Rosa started making the payments, the trustee then is the title holder holding their title for the benefit of the beneficiary in this case. Why didn't you just transfer the title to Rosa at that point? Why didn't you just do the honest thing so that everybody knew who owned this property? I mean, this is something they can sort of say in their hearts or they can say it around the family dinner table. But there's no event there for anybody else to recognize what's going on here. And now all of a sudden we want to go back and rectify when Ms. Garcia has offered to give her sister the title and her sister has declined to do the sort of the legal and the right thing here. Your Honor, if I could turn back the clock, if I could educate the client, if I could somehow rectify that, I would have done it. But these are very unsophisticated people and they're family members. But I must say it's uncontroverted. At the time of trial, the parties testified without contradiction we had this agreement, and it was an oral agreement that was fully performed by Rosa. So whether or not the deed was transferred, whether or not they memorialized it in a written agreement, whether or not they actually carried out the ultimate task really does not undo the resulting trust. It's based upon the agreement and the performance by Rosa. I understand. But in a resulting trust, generally there has to be an actual transfer, a legal transfer, as opposed to a constructive transfer resulting in a resulting trust. But there has to be a change in the position on the part of Rosa. She then changed the entire arrangement of Garcia making the mortgage payments, Garcia making any ownership payments. At that point in time, in February of 1996, Rosa changed her position and Garcia agreed, you pay all the costs of ownership and you will get title. Mr. Davis, if the situation had been changed slightly and if Ms. Rosa had gone into bankruptcy instead of Ms. Garcia, would we be here arguing about whether Ms. Rosa owned this property or not, whether that was part of the bankruptcy estate? Good question. I'm not sure. I mean, it seems to me we have to have a consistent rule between those two. We don't get to play them off. Does the bankruptcy trustee for Hortensia Rosa now come in and say, there was a resulting trust and now we're going to take this property that's in Ms. Garcia's name, it's on the books, it's owned by Ms. Garcia, and even though they had this informal arrangement around the dinner table. There may be or could have been an estoppel argument under those flipped circumstances. But in this case, we don't even have a fact of Ms. Garcia executing a deed and delivering it to her, had it been rejected, then we'd know what the answer is. But that never took place. The last act of Garcia executing and delivering a deed. But we do have some evidence in the record, some suggestion in the record, that Ms. Garcia offered to go down and sign the papers for Ms. Rosa and that Ms. Rosa declined that. But we had no overt act and no refusal, as I can tell. Now, if this had simply been a loan of money, if Garcia had said to her sister, you know, I'm having trouble making the family budget and meeting my requirements, can you loan me some money? And the same thing occurred. She took that money and used it in part or whole to make the payments on the property. Would that be different? It would. I believe under those circumstances she would be an unsecured creditor on the same ratable scale as the trustee is urging at this point. An unsecured creditor, general unsecured creditor because? Because she had no agreement with regard to transfer of title at the ultimate completion of all her duties under that agreement. The agreement you refer to, of course, is an oral agreement. Yes, sir. In this case, the agreement was I pay the cost of ownership, I pay off the mortgage, you give me title. And as I indicated, there is no contradiction in the record that there was any other agreement. Had there been one, as you say, of pay ---- Does the statute of frauds speak to that? Yes. The statute of frauds says that all agreements with regard to transfer of interest and real property must be in writing. However, there is an exception, and the exception is where one side fully performs their obligation under that agreement. So you can have an oral agreement for the transfer. If Rosa in this case fully performs her half, statute of frauds is not a bar to the transfer. And, Your Honors, I would submit also that given the authorities that I've cited, that once a resulting trust is imposed, then the ratable distribution that was proposed by the judge, and in fact found by the judge, is not appropriate as a remedy. Submit it, Your Honor. Mr. Davis, if we were to agree with the trustee, does Ms. Rosa have any other claims here? What about an equitable lien? Is that a remedy that's available to her? I don't believe so. That was one of the proposals that was urged to the bankruptcy court, and the court found instead that a resulting trust took place, and a resulting trust was imposed with Garcia being the title holder. If you agree with the trustee, then basically the bankruptcy creditors are all unjustly enriched, in our opinion, because Rosa fully performed her obligation under this and was to get title. They're contending that she's going to be unjustly enriched, and I'd submit that is just not the case because she fully performed her obligation and was supposed to get title. So all she's getting is what she bargained for. Okay. Mr. Collins. Thank you. In answer to the question where is the transfer, counsel is accurate. There was a transfer of money, but a transfer of money is going to indicate, in our view, a debtor-creditor relationship, which furthers our position that this is not the basis of a resulting trust. It's more towards an equitable lien theory, and if she's entitled to any court of due equitable remedy, it should be based on her contributions for the property supported by an equitable lien or, in essence, equitable subrogation. In one of the comments where there was a what change in position or evidence, counsel argues that there was just the position in a change in position of how did Rosa manifest this intent. Other than the payment of money, there has been no change of position relative to this real property indicating any incidence of ownership in favor of Rosa. That is the only factor that the parties will agree on, anyway, that indicates the evidence of this transfer. And finally, I'm not wanting to talk against myself, but I think in response to your request is about the statute of frauds, I think there is also another body of law under California which indicates that equitable remedies are not to be barred by the statute of frauds. I think that's a further exception to the one mentioned by counsel. If the Court has any other questions, I'll submit it. I guess not. Thank you. Thank you, counsel, both of you, for your argument. The matter just argued is submitted and we'll.
judges: Rymer, Hawkins, Bybee